I proceed to the case of Gloria Cravens v. Workers' Compensation Comm'n, 4090638. Counsel, please. May it please the Court. The appellant employee claims error in the Commission's decision on a few issues, and most notably, and I'll begin first with whether the petitioner carried her burden of proving that she sustained a repetitive trauma accident arising out of her employment activities. The Commission determined that the employee, the appellant, did not carry her burden of proof on the issue of repetitive trauma because she did not demonstrate that her employment activities required awkward hand postures or significant forceful gripping. I believe our statement of facts lays out in fairly good detail the work activities performed by the appellant here. She was the manager of this retail store. She testified that 80 percent of her day involved the use of her hands and arms in a repetitive fashion, performing varied tasks, that the tasks involved gripping, manipulating vibratory items, removing and cleaning items every single day, and she also had to stock various items, and some of those items might have taken her all day to do. The Commission found that the videotape of the petitioner's job activities, which was admitted into evidence, was persuasive in that it did not demonstrate the awkward hand postures or the significant force that it was looking for. We disagree, number one, on a manifest basis that the videotape contradicts the petitioner or the appellant's testimony for a description of her work activities or that the activities depicted in the videotape did not at least demonstrate awkward hand postures and significant force. Didn't the Commission also find that there was a preexisting condition which was likely the cause? Yes, I was going to get that. The left hand was operated in 2001, and the Commission determined that this preexisting condition was the cause of her current problems. That, again, is against the manifest way of the evidence. There's no medical opinion which establishes a connection between that left hand problem in 2001 and the problem she developed in December of 2005. As a matter of fact, Dr. Neumeister and Dr. Stewart, the respondents' IME, testified that there were no systemic problems or preexisting conditions which contributed to the appellant's condition here. With respect to the repetitive work activities, the Commission, in the appellant's view, adopted a standard of proof which raised the burden and actually defined what can be considered repetitive trauma, and I believe that's contrary to precedent established by the appellate court here in the cases of the City of Springfield, the Feerke case, and the Edward Hines case. Before I get into those, when you were talking about the state of the record and the evidence before the Commission, didn't Dr. Stewart opine that the claimant's condition of well-being specifically was not caused to relate to the appointment? Wasn't that the basis? Did he make that opinion? Dr. Stewart? Yes. Yes, I think he did. That's the IME doctrine. Right. Yes, he did say that. Yes. And again, I'll get to that in a second. That also is an issue with respect to whether his opinion was properly admitted, but with respect to the repetitive trauma, I don't believe that the Commission's requirement that the appellant prove that her activities involved significant force or awkward postures as required by Peoria Bellwood or the other cases. The claimant is only required to prove that she developed the condition during the course of her employment or as a result of the work activities. The concept of repetitive trauma and that phrase, the term of art, was developed to identify statute of limitations and notice requirement dates. It is not a definition, an all-inclusive definition. There has never been a definition of what constitutes repetitive trauma. The petitioner did not use her hands in a sustained, forceful way, but the appellate court has previously ruled that the appellant or the claimant is not required to prove that she was performing one task for a large portion of the day or that she is necessarily required to establish the forces or the frequency with which she might do that. And again, the respondent had a representative there, a person who appeared in the videotape, did not refute the petitioner's testimony at all as to her job description or her characterization of it being repetitive. Dr. Neumeister testified that he felt it was repetitive in nature. There was a videotape of the activities of the claimant, correct? Yes. Isn't that good evidence to look at? Of course. You're actually seeing what the claimant is actually doing every day? Of course. It is good to look at. The petitioner testified that it also was on a slow day. It was also something that was staged because the actual demonstration of the work performed by the manager, the district manager, was not performed by her on a regular basis. It did not show, it was taken at a downtime, and that's unroboted. From what you're saying, and that's a legitimate argument to make, but all of this qualifying testimony relating to the videotape also went to the commission. Yes. So they only had the videotape. They had an explanation from both sides as to the interpretation of what was going on, correct? No. They did not have an explanation from both sides. I thought you said the claimant testified that this was not representative of the normal... That's right, and that was unroboted. All right, well, so there's an explanation. The videotape just didn't go in without any testimony, did it? Not in terms of foundation from the... But I have not made that argument. There's no foundation. The petitioner was allowed to testify on it. She also expanded on it. That's obviously a manifest way... But that's what I'm saying. I understand that. I understand. I think that the manifest way to the evidence is in opposition to that videotape as being sufficient to overcome the petitioner's testimony, her description of her work activities to Dr. Neumeister, and to the fact that her own testimony was that this was not an accurate depiction of her work activity. It demonstrated the type of things she did. It didn't demonstrate certainly the frequency because it wasn't done on a day that was a normal work day. It didn't show her doing all of her activities of stocking. All of these things were performed over a seven-hour period. But the commission heard that testimony. The arbitrator heard that testimony. They did, and they discounted the petitioner. Yes. Can they do that? They can do that. I don't agree that that is consistent with the manifest way, but my argument is just not limited to the manifest way. My argument is also about their application of the standard of proof. They raised the burden of the appellant here. They did not just require her to demonstrate that she used her hands in the performance of her job. I'm not just suggesting that you use your hands in the performance of your job, but it was repetitious. And they increased her burden of proof and required her to demonstrate that she was exposed to significant forceful gripping and awkward hand postures. And the failure of her to demonstrate that made her job not repetitive. I don't believe that's consistent with prior appellate court rulings. I believe that the commission improperly required a qualitative proof that she should not have to be required to prove. I'm not suggesting that anybody who used their hand in their job activities or their arms in their job activities can allege and prove a repetitive trauma claim. That requires also a causation opinion, and that causation opinion is present with Dr. Neumeister, who felt that the appellant's job description was in fact repetitive and that it was his opinion her condition was causally related to the work activities. So how specifically, again, did the commission raise the burden of proof in this case? How specifically? By requiring the petitioner to demonstrate the significant forceful gripping and the awkward postures that Dr. Stewart said that was missing in what he would need to say that there was a causal relationship. And by adopting Dr. Stewart's definition of repetitious work, they then required the petitioner to go beyond that level or that threshold. And who asked for the videotape? Who asked for it? Yeah. I don't know. I don't know who asked for the videotape. I know it wasn't done before Dr. Neumeister's deposition or wasn't disclosed before that. I would like to deal with Dr. Stewart's opinion and the gear issue that I've raised. I think it's an important issue for the court. As you know, when the petitioner took the deposition of her treating physician, an IME report and examination had been done by Dr. Stewart and he had issued a report of his opinions. And the report of his opinion was silent as to causation or a dispute regarding causation. He basically disputed the need for treatment, the reasonableness and necessity for treatment and the diagnosis. He did not conduct any investigation, even though appellee counsel's letter to him requested a causation opinion. That was disclosed. It was the only opinion extent at the time of Dr. Neumeister's deposition. Causation was not disclosed as an issue. After Dr. Neumeister's deposition, a supplemental report was issued two months after the deposition disputing causation. And based upon that, it was Dr. Stewart's opinion, all his opinions against the finding of causation arrived from that supplemental report. I'm cognizant of the court's decision in the city of Chicago. I believe that this case is distinguishable from those facts. Merely because it is clear here, and I think in dicta, as I mentioned in my brief, this court has said where there's somewhat of an intention to withhold a causation opinion before a treating doctor's deposition. If there's some sort of evidence of that, then your outcome might have been different in the city of Chicago. The city of Chicago case was not at all factually analogous to this. That was concerned with a 19B hearing that took place two years before a final hearing, and an IME report was being offered at that time. That decision was based upon an overturning of the concept of the deposition or the arbitration hearing starting at the time of depositions, and no other opinions can be offered at that point. This case is more of a surprise. There is definite prejudice here. The appellant was unable to know the substance of Dr. Stewart's opinions, unable to ask the treating physician questions which would directly address those issues, and the commission's reliance upon that opinion is the basis for their decision denying causation hearing. The appellant suggests that that opinion should not have been admitted, that it does constitute surprise testimony, surprise evidence, and it should be barred, that the appellant had plenty of opportunity to correct its oversight in getting a causation opinion from Dr. Stewart well ahead of the deposition of the treating doctor, which was scheduled three months later, in order to fully apprise the claimant or the appellant of what disputes and causation it did have. And the appellant was prejudiced in that she wasn't able to ask the questions that would have offered a different opinion or at least rebutted Dr. Stewart's opinions. We would ask that that report be removed from evidence and the commission's decision of admitting it reversed. Obviously that may create an issue of remand and we would expect that that may be something for the commission to do to remand or for the court to do, remand the commission for additional findings on the accident after that report had been removed. We also believe that the commission's decision on causation and accident from a manifest waste standpoint is also an error and should be reversed. Thank you. Counsel, please. Yes, I'm Mike Brando. I'm here on behalf of Parkway. Your Honor, Mr. Bashardi. I'll go to the report of Dr. Stewart first and his opinion on causal connection. First of all, Mr. Bashardi never raised an objection pursuant to Geer. Go through the whole transcript. Now once did he say Geer? He raised an objection because of Marks stating that the trial had started earlier when the deposition of Dr. Neumeister was taken. He received the report afterwards. The report should not have gone in. Marks is in the law in Illinois, plain and simple. He never said Geer once throughout. He weighed any objections he may have had. Second of all, he received in the deposition of Dr. Stewart. It appears that the initial IME report was on May 22nd, 2006. The supplemental report was October 12th, 2006, apparently after the death of Dr. Neumeister. The deposition of Dr. Stewart was on December 5th, 2006. He didn't say he did not have. There was no argument, nothing in the records indicating that Mr. Bashardi did not have this report. He's claiming he was surprised. Where is there ever surprise in a worker's comment? Whenever you have an IME doctor, you're always going to assume causation will be raised one time or another. Even if he was surprised, without raising a Geer objection, Stewart's opinion goes in, he had the option of taking a supplemental death of his own doctor to counter that. He didn't do that, plain and simple. Based upon that alone, Stewart's opinion was admitted into evidence.  the decision of the commission. Counsel, who requested this videotape that was raised but never illuminated? I can just go from my reading from the transcript. I was not the attorney in charge of the case. What's your understanding of how the video came through? My understanding from reading the transcript, it came into play during direct testimony. Mr. Bashardi was asking questions of his client. I would assume, and this is just my assumption here, they may have talked to the previous attorney saying that Mr. Craven would be discussing this tape. We don't want you to assume. I don't have an answer. You don't know how it came to be created or whose request it was created? I assume. I can't assume. You don't know. I'm just saying from my experience, I'm sure it came into play because the employer wanted a tape to display the type of job activities. You don't know if the employer prepared the tape? I'm just arguing what's in the record. As far as I know... He only presented it during the hearing. Who presented it? It came during the hearing during the case in chief and Mr. Bashardi was asking questions. So the claimant produced it, moved it into evidence or moved it into the hearing first? I would imagine he asked, Mr. Bashardi asked questions of his client on the tape. His client reviewed the tape. In your brief, you've got at arbitration, petitioner used that job video during her case in chief. That's true. And you cite to the record. Is that correct? That's correct. That's correct. That's correct. And the argument on the job video saying it's not accurate and saying the commission is trying to raise the burden of proof to a higher standard in a reflective trauma case just isn't true. If you look at it, it says here, it comments first Dr. Newmeister assumed that the petitioner's work was repetitive and required a fair amount of flexion and extension. The video does not support this assumption. That's the next sentence. Then it goes in, the work activity of showing the video showing duration requires no significant force or awkward hand position. But basically it says here, you can read this one or two ways. I don't see where it has a different standard one way or the other. As far as the burden of proof anyway, there was no testimony by the petitioner saying how many customers she saw in a day, how many toys she manipulated, how often she stopped. There was no testimony on the number of times. She just says I used my hands 80% of the day. I use my hands all the time. We all use our hands all the time. It doesn't mean it's a compensable claim. Mr. Brichardi, quite frankly, will have you believe that anytime someone develops a carpal tunnel case and they're working somewhere, it's a claim. I think he's arguing it should be a per se violation. I don't think we're trying to change the standard. I think he's trying to change the standard. But the bottom line is look at the evidence and the exhibits overall. There is sufficient basis to uphold the decision of the commission and definitely it's not against the manifest weight of the evidence. Thank you. Counsel, please. I misunderstood your question, Your Honor. I did not create that videotape. That videotape was offered by the respondent for convenience sake and for judicial economy. Who introduced it into evidence? It was introduced by the respondent. It was played during the petitioner's testimony so that she could comment on it. But it was the respondent's attorney, Mr. Hoffman, who was going to introduce it into evidence. It was an agreement that we would do it in that way so the petitioner would then be able to comment. But you acquiesced in this? Yes, I did. You objected. You're claiming the videotape is somewhat inaccurate but you didn't object to it. I did not object to it because I did not believe with the petitioner's or with the appellant's additional testimony or explanation that it did not constitute a complete day or an accurate depiction of her day. But it was illustrative of the types of activities that she would do. Certainly if the appellant was relying solely upon the videotape to prove her condition, she would have testified to nothing else. That's not what she did. She testified a great deal at the arbitration hearing about how she used her hands and her arms at work. And that was even after we knew that this videotape was going to come in because it wasn't designed in my mind to show what she did. It was a 20-minute video. But the bottom line is you did not object to it. Let's establish that. Did you object to this videotape coming in? I did not object. No, I did not. Regarding the waiver of the objection argument, Marks was based upon gear. It is a gear objection. It has not been waived in my mind. I don't believe under the law it's been waived as well. Gear is obviously based upon Section 12 and hearsay. But we would ask that that report be stricken. Thank you. Thank you, Counselor Rubato. Do you have anything, Rubato? Oh, excuse me. I'm well. Yes. No, no. I was looking at something else. The court will take the matter unadvised.